**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LKQ CORPORATION, and KEYSTONE AUTOMOTIVE INDUSTRIES, INC. | ) ) ) ) | Case No. 1:21-cv-05854 |
| | ) | Honorable Jorge Alonso |
| Plaintiff, | ) ) | Honorable M. David Weisman |
| v. | ) ) ) | |
| GENERAL MOTORS COMPANY, and GM GLOBAL TECHNOLOGY OPERATIONS, LLC, | ) ) ) ) | |
| Defendant. | ) | |

**<u>PLAINTIFFS' MOTION TO DEEM ADMITTED CERTAIN RESPONSES
TO REQUESTS TO ADMIT</u>**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 2 |
| III. | LEGAL STANDARDS | | 4 |
| IV. | ARGUMENT | | 4 |
| | A. | LKQ SERVED THE IDENTICAL RFAS IN THE *LKQ V. KIA* CASE. | 4 |
| | B. | GM'S OBJECTIONS WERE SUBSTANTIALLY THE SAME AS THOSE REJECTED IN THE *LKQ V. KIA* CASE. | 5 |
| | | 1. GM'S "GENERAL OBJECTIONS" WERE IMPROPER | 5 |
| | | 2. GM'S OBJECTIONS THAT COMMONLY UNDERSTOOD WORDS WERE VAGUE AND AMBIGUOUS SHOULD BE STRICKEN. | 6 |
| | C. | GM'S DECISION TO RE-WRITE LKQ'S PUBLIC USE RFAS IS IMPROPER | 8 |
| | D. | GM'S REFUSAL TO PROVIDE A PROPER RESPONSE IS PARTICULARLY EGREGIOUS GIVEN THE TESTIMONY OF ITS EMPLOYEES. | 10 |
| V. | CONCLUSION | | 14 |

# TABLE OF AUTHORITIES

**Cases**

*LKQ Corp. v. Kia Motors Am., Inc.*,
   No. 21 C 3166, 2023 WL 2429010 (N.D. Ill. Mar. 9, 2023) ............................................*passim*

*Agrizap, Inc. v. Woodstream Corp.*,
   431 F. Supp. 2d 518 (E.D. Pa. 2006) ........................................................................................9

*Curtis v. Costco Wholesale Corp.*,
   807 F.3d 215 (7th Cir. 2015) .....................................................................................................8

*Garrard v. Rust-Oleum Corp.*,
   No. 20 C 00612, 2023 WL 1475164 (N.D. Ill. Feb. 2, 2023).....................................................8

*Hankins v. Alpha Kappa Alpha Sorority, Inc.*,
   No. 19 CV 00147, 2021 WL 10312277 (N.D. Ill. Feb. 3, 2021)..............................................13

*In re Smith*,
   714 F.2d 1127 (Fed. Cir. 1983)...........................................................................................3, 9

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
   424 F.3d 1374 (Fed. Cir. 2005)...........................................................................................2, 3

*Symbria, Inc. v. Callen*, No. 20 C,
   4084, 2021 WL 4987185 (N.D. Ill. Aug. 2, 2021).....................................................................8

*Turner v. California Forensic Med. Grp.*,
   No. 2:09-CV-3040-GEB-CMK, 2013 WL 1281785 (E.D. Cal. Mar. 26, 2013)......................10

*Vera Bradley Designs, Inc. v. Aixin Li*,
   No. 20 C 2550, 2021 WL 780718 (N.D. Ill. Mar. 1, 2021).......................................................8

**Statutes**

35 U.S.C. § 102(a) .........................................................................................................................2

**Rules**

Fed. R. Civ. P. 37(a)(5) ................................................................................................................14

Fed. R. Civ. P. 36(a)(6) ............................................................................................................1, 5

Fed. R. Civ. P. 37(a)(5)(A)............................................................................................................2

I.  **INTRODUCTION**

The identical requests for admission ("RFAs") before this Court now were recently litigated by LKQ in a separate automotive design patent case and resolved in LKQ's favor. Worse, as part of the meet and confer process related to the RFAs at issue herein,[1] LKQ provided GM a copy of this order via email dated April 10, 2023, and advised GM that, "we would direct your attention to the attached court order which dealt with very similar RFAs and rejected similar objections to those interposed by GM." Bregenzer Dec. ¶ 4, Ex. 1. That order has since been reported in Westlaw as *LKQ Corp. v. Kia Motors Am., Inc.*, No. 21 C 3166, 2023 WL 2429010 (N.D. Ill. Mar. 9, 2023).

Notably, in that order, the Court stated that, "Kia's responses demonstrate a host of improper practices with respect to answering Rule 36 requests for admissions, and leave much to be desired. The Court hopes that Kia, as well as other litigants before this Court, avoid the same errors made in these responses in the future." *LKQ Corp.*, 2023 WL 2429010, at *1 (N.D. Ill. Mar. 9, 2023).

GM chose to disregard the Court's admonition and make the same errors that the Court previously found "demonstrate[d] a host of improper practices," even though it had been provided a copy of that order. *Id.* This Court should not countenance GM's apparent disrespect and the unnecessary time and expense that LKQ and this Court are forced to incur in re-litigating an issue that has already been decided. This Court should deem RFA Nos. 50-54, 74-78, 98-102, 122-126,

---

[1] The meet and confer process related to the issues discussed herein has been extensive and has included numerous emails and letters back and forth in which LKQ attempted to resolve this issue without the need for court intervention. In addition to the numerous emails—dating back to 2022—LKQ also engaged in multiple telephonic meet and confers including on December 9, 2022. Most recently, counsel for LKQ (Michael Bregenzer) met with counsel for GM (Conrad Gosen) on June 10, 2024, via telephone, and discussed these issues (and others) from 1-1:30p.m. However, after good faith attempts, at least on the part of LKQ, the parties remain at an impasse.

146-150, 170-174, 194-198, 218-222, and 242-246 (the "Public Use RFAs") admitted and should award LKQ its fees and costs incurred in bringing this motion pursuant to Fed. R. Civ. P. 37(a)(5)(A).

**II.     BACKGROUND**

GM's U.S. Design Patent Nos. D818,406 ("the '406 patent") and D828,256 ("the '256 patent") are both invalid under 35 U.S.C. § 102(a), which provides in pertinent part that, "[a] person shall be entitled to a patent *unless* . . . the claimed invention was . . . in public use . . . before the effective filing date of the claimed invention." A patent is invalid based on public use if (1) the invention was disclosed to the public or in public use, and (2) the invention was ready for patenting. *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-80 (Fed. Cir. 2005).

This motion to compel focuses on RFAs that relate to the first prong of the public use invalidity test: whether the invention was in public use. In that regard, case law provides that "[t]he proper test for the public use prong… is whether the purported use was: (1) accessible to the public *or* (2) was commercially exploited." *Invitrogen Corp.*, 424 F.3d at 1380 (emphasis added).

Here, GM commercially exploited both the '406 patent and the '256 patent through a series of consumer clinics designed to elicit feedback from consumers regarding GM's efforts to gauge consumer demand and to determine whether the designs were sellable, and how much consumers would pay for the claimed designs. In that regard, the Federal Circuit has held that when determining whether a patentee has commercially exploited his or her designs, courts should consider the "purpose" of public use, looking at whether the public use "include[d] market testing where the inventor is attempting to gauge consumer demand for his claimed invention . . . [or] to determine whether potential consumers would buy the product and how much they would pay for

it." *In re Smith*, 714 F.2d 1127, 1135 (Fed. Cir. 1983) (affirming invalidity of patent due to public use and commercial exploitation).

In accord with the Federal Circuit's decision in *In re Smith*, and in order to prove that GM commercially exploited the '406 patent and the '256 patent at GM's consumer clinics, LKQ served the Public Use RFAs in an effort to establish the purpose(s) of GM's consumer clinics. More specifically, and by way of example,[2] LKQ served the following requests to admit related to the November 19-21, 2013 consumer clinic related to the 2018-23 Chevrolet Traverse—the vehicle GM contends incorporates the front fender claimed by the '406 patent:

> 50. One of the purposes for the November 19-21, 2013, consumer clinic related to the 2018-2023 Chevrolet Traverse (C1YC) was to receive consumer feedback about the designs shown to the clinic participants at that clinic.
>
> 51. One of the purposes for the November 19-21, 2013, consumer clinic related to the 2018-2023 Chevrolet Traverse (C1YC) was to determine whether or not the vehicle was sellable.
>
> 52. One of the purposes for the November 19-21, 2013, consumer clinic related to the 2018-2023 Chevrolet Traverse (C1YC) was to determine the purchase intent of consumers.
>
> 53. One of the purposes for the November 19-21, 2013, consumer clinic related to the 2018-2023 Chevrolet Traverse (C1YC) was to determine whether potential consumers would buy the vehicle and how much they would pay for it.
>
> 54. One of the purposes for the November 19-21, 2013, consumer clinic related to the 2018-2023 Chevrolet Traverse (C1YC) was to gauge consumer reaction to the vehicle's design.

Bregenzer Dec. ¶ 5, Ex. 2.

Notwithstanding the plain relevance of the Public Use RFAs, and the fact that each of the Public Use RFAs seeks an admission of a simple, singular fact, GM has refused to properly respond to the Public Use RFAs. Instead of either admitting or denying the Public Use RFAs as

---

[2] All of the Public Use RFAs follow the same format as RFAs 50-54, differing only in the specific clinics referenced and the specific vehicle at issue. *See e.g.* Bregenzer Dec. ¶ 5, Ex. 2.

3

required by Fed. R. Civ. P. 36, GM first offered a series of meritless objections, and then effectively re-wrote LKQ's Public Use RFAs and answered its own version of these RFAs. Set forth below, by way of example, is GM's response to RFA No. 53:[3]

> **REQUEST NO. 53:**
>
> One of the purposes for the November 19-21, 2013, consumer clinic related to the 2018-2023 Chevrolet Traverse (C1YC) was to determine whether potential consumers would buy the vehicle and how much they would pay for it.
>
> **RESPONSE:**
>
> GM incorporates by reference each of its General Objections as if fully set forth herein. GM further objects to the phrases "purposes," "would buy," "the vehicle," and "would pay" as vague and ambiguous. Subject to and without waiving these objections, GM admits that one of the purposes of the clinic related to the 2018-2023 Chevrolet Traverse (C1YC) was to receive participant feedback. Otherwise, denied.

Bregenzer Dec. ¶ 5, Ex. 2. As explained further below, GM's response is improper, as are all its responses to the Public Use RFAs.

### III. LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 36(a)(6), "[t]he requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served."

### IV. ARGUMENT

#### A. LKQ Served the Identical RFAs in the *LKQ v. Kia* Case.

As referenced above, the RFAs at issue in the *LKQ v. Kia* case—the order LKQ provided GM back in April of 2023—were identical (except for the clinic dates and vehicles) to those served on LKQ as shown in the table below:

---

[3] GM's responses to the other Public Use RFAs are essentially identical, differing only in the specific words GM claims are "vague and ambiguous."

4

| LKQ's RFA in *LKQ v. GM* | LKQ's RFA in *LKQ v. Kia* |
|---|---|
| RFA No. 50: One of the purposes for the November 19-21, 2013, consumer clinic related to the 2018- 2023 Chevrolet Traverse (C1YC) was to receive consumer feedback about the designs shown to the clinic participants at that clinic. | RFA No. 1812: One of the purposes for the October 12-13, 2007 consumer clinic related to the 2009-2013 Forte (TD) was to receive consumer feedback about the designs shown to the clinic participants at that clinic. |
| RFA No. 51: One of the purposes for the November 19-21, 2013, consumer clinic related to the 2018- 2023 Chevrolet Traverse (C1YC) was to determine whether or not the vehicle was sellable. | RFA No. 1813: One of the purposes for the October 12-13, 2007 consumer clinic related to the 2009-2013 Forte (TD) was to determine whether or not the vehicle was sellable. |
| RFA No. 52: One of the purposes for the November 19-21, 2013, consumer clinic related to the 2018- 2023 Chevrolet Traverse (C1YC) was to determine the purchase intent of consumers. | RFA No. 1814: One of the purposes for the October 12-13, 2007 consumer clinic related to the 2009-2013 Forte (TD) was to determine the purchase intent of consumers. |
| RFA No. 53: One of the purposes for the November 19-21, 2013, consumer clinic related to the 2018- 2023 Chevrolet Traverse (C1YC) was to determine whether potential consumers would buy the vehicle and how much they would pay for it. | RFA No. 1815: One of the purposes for the October 12-13, 2007 consumer clinic related to the 2009- 2013 Forte (TD) was to determine whether potential consumers would buy the vehicle and how much they would pay for it. |
| RFA No. 54: One of the purposes for the November 19-21, 2013, consumer clinic related to the 2018-2023 Chevrolet Traverse (C1YC) was to gauge consumer reaction to the vehicle's design. | RFA No. 1816: One of the purposes for the October 12-13, 2007 consumer clinic related to the 2009-2013 Forte (TD) was to gauge consumer reaction to the vehicle's design. |

Bregenzer Dec. ¶ 5, Ex. 2. *See also LKQ Corp.*, 2023 WL 2429010, at *2.

### B. GM's Objections Were Substantially the Same as Those Rejected in the *LKQ v. Kia* Case.

#### 1. GM's "General Objections" Were Improper

Each and every one of GM's responses to the Public Use RFAs states in part that, "GM incorporates by reference each of its General Objections as if fully set forth herein." Bregenzer Dec. ¶ 5, Ex. 2. But GM is well-aware that these "General Objection" to LKQ's RFAs are

5

improper. Indeed, the *LKQ v. Kia* Court in its March 9, 2023 Order, which again, LKQ provided GM on April 10, 2023, explicitly stated:

> Not only did Kia provide specific objections and then purport to substantively answer the RFAs, but it also incorporated General Objections at the outset of its responses. General objections that recite boilerplate language is another common discovery practice that is completely improper…. Yet, old habits die hard, and they seem to live on in discovery exchanged between the parties, outside the purview of Courts—until, of course there is a dispute requiring motion practice. In sum, Kia's responses to the Requests to Admit demonstrate outdated and disfavored discovery practices. Kia's boilerplate objections are stricken.

*LKQ Corp.*, 2023 WL 2429010, at *3. This Court should similarly strike GM's General Objections.

### 2. GM's Objections That Commonly Understood Words Were Vague and Ambiguous Should Be Stricken.

Apart from its "General Objections," GM also includes a handful of objections that certain commonly-used words are "vague and ambiguous," although GM fails to explain how any of the terms to which it objects are actually "vague and ambiguous." Bregenzer Dec. ¶ 5, Ex. 2. More specifically, GM claims that the following terms—highlighted in bold and italics below to provide this Court with context—are "vague and ambiguous:"

**REQUEST NO. 50:**

One of the ***purposes*** for the November 19-21, 2013, consumer clinic related to the 2018-2023 Chevrolet Traverse (C1YC) was to receive consumer feedback about the ***designs shown to*** the clinic participants at that clinic.

**REQUEST NO. 51:**

One of the ***purposes*** for the November 19-21, 2013, consumer clinic related to the 2018-2023 Chevrolet Traverse (C1YC) was to determine whether or not the ***vehicle*** was ***sellable***.

**REQUEST NO. 52:**

One of the ***purposes*** for the November 19-21, 2013, consumer clinic related to the 2018-2023 Chevrolet Traverse (C1YC) was to determine the ***purchase intent*** of consumers.

**REQUEST NO. 53:**

6

One of the *purposes* for the November 19-21, 2013, consumer clinic related to the 2018-2023 Chevrolet Traverse (C1YC) was to determine whether potential consumers *would buy the vehicle* and how much they *would pay* for it.

**REQUEST NO. 54:**

One of the *purposes* for the November 19-21, 2013, consumer clinic related to the 2018-2023 Chevrolet Traverse (C1YC) was to gauge *consumer reaction* to the *vehicle's design*.

Bregenzer Dec. ¶ 5, Ex. 2. Although LKQ cites above only GM's "vague and ambiguous" objections to RFA Nos. 50-54, this Court should note that all of the other Public Use RFAs include the same objections to the same words. GM's specific objections are meritless and should also be overruled.

Indeed, GM's "vague and ambiguous" objections seem to have been pulled right from the *LKQ v. Kia* case. There, Kia, like GM here, objected to the Public Use RFAs as "vague and ambiguous as to the phrases 'one of the purposes,' 'related to,' and 'consumer feedback about the designs shown to the clinic participants at that clinic.'" *LKQ Corp.*, 2023 WL 2429010, at *2. And here, GM has similarly objected to commonly understood words and phrases such as "purposes," "consumer reaction," "vehicles," and "designs shown to." This Court should, as the *LKQ v. Kia* court did, find that "[GM's] vague and ambiguous objections are… overruled." *LKQ Corp.*, 2023 WL 2429010, at *4.

Further, none of the terms to which GM objects are actually vague and ambiguous; the meaning "can be ascertained by using reason and common sense." *Symbria, Inc. v. Callen*, No. 20 C 4084, 2021 WL 4987185, at *2 (N.D. Ill. Aug. 2, 2021) (overruling objections in the RFA context that common words such as "compete," "direct," and "indirect" were "vague and ambiguous") (citations and quotation marks omitted). And for exactly this reason, such objections are routinely rejected by courts in this district:

> The rote, unamplified recitals often provided are… "vague" or "vague and ambiguous." But how is "customer" vague? Or "source"? These terms are clear even to the uninitiated.

7

> Not surprisingly then, court after court has rejected these unadorned boilerplate "objections" as tantamount to no objections at all…. Objections like these are little more than a tactic to obfuscate and delay.

*Vera Bradley Designs, Inc. v. Aixin Li*, No. 20 C 2550, 2021 WL 780718, at *3 (N.D. Ill. Mar. 1, 2021).

Second, if GM really did not understand these terms it should have raised that issue during the two telephonic meet and confers related to the Public Use RFAs or in any of the email correspondence related to the Public Use RFAs. GM has never sought to explain or amplify these objections. Bregenzer Dec. ¶ 6. And "boilerplate, unamplified objections will, as always, be summarily rejected." *Garrard v. Rust-Oleum Corp.*, No. 20 C 00612, 2023 WL 1475164, at *2 (N.D. Ill. Feb. 2, 2023) (citing *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). This Court should also overrule GM's "vague and ambiguous" objections.

### C.     GM's Decision to Re-Write LKQ's Public Use RFAs is Improper.

As discussed above, each of the Public Use RFAs asks for a simple admission: Was one of the purposes for a specific GM clinic, "to receive consumer feedback about the designs shown to the clinic participants at that clinic," "to determine whether or not the vehicle was sellable," "to determine the purchase intent of consumers," "to determine whether potential consumers would buy the vehicle and how much they would pay for it," or "to gauge consumer reaction to the vehicle's design." Bregenzer Dec. ¶ 5, Ex. 2.

These RFAs were crafted with the intention of tracking prior court decisions finding consumer clinics were an invalidating "commercial exploitation." For example, in the Federal Circuit's decision in *In re Smith*, the Federal Circuit found that "market testing where the inventor is attempting to gauge consumer demand for his claimed invention," including testing "to determine whether potential consumers would buy the product and how much they would pay for it" as well as to "obtain marketing data such as the purchase intent of the consumers, was an

8

invalidating "commercial exploitation." Not surprisingly, this language closely tracks LKQ's Public Use RFAs. *In re Smith*, 714 F.2d at 1135. *See also*, *Agrizap, Inc. v. Woodstream Corp.*, 431 F. Supp. 2d 518, 535 (E.D. Pa. 2006) ("Testing the 'buying potential of the invention'" is commercial exploitation).

Notwithstanding the specific language of the Public Use RFAs, and putting aside GM's meritless "General Objections" and "vague and ambiguous" objections and its improper effort to respond "[s]ubject to and without waiving these objections," GM did "respond" to the Public Use RFAs. But it wasn't a proper response. Instead, GM ignored and/or re-wrote the Public Use RFAs and opted instead to respond to RFAs that LKQ did not pose, as shown in the table below:

| LKQ's RFA in LKQ v. GM | GM's "Response" |
|---|---|
| RFA No. 50: One of the purposes for the November 19-21, 2013, consumer clinic related to the 2018- 2023 Chevrolet Traverse (C1YC) was to receive consumer feedback about the designs shown to the clinic participants at that clinic. | [Objections omitted]…. GM admits that one of the purposes of the clinic related to the 2018- 2023 Chevrolet Traverse (C1YC) was to receive participant feedback. Otherwise, denied. |
| RFA No. 51: One of the purposes for the November 19-21, 2013, consumer clinic related to the 2018- 2023 Chevrolet Traverse (C1YC) was to determine whether or not the vehicle was sellable. | [Objections omitted]…. GM admits that one of the purposes of the clinic related to the 2018- 2023 Chevrolet Traverse (C1YC) was to receive participant feedback. Otherwise, denied. |
| RFA No. 52: One of the purposes for the November 19-21, 2013, consumer clinic related to the 2018- 2023 Chevrolet Traverse (C1YC) was to determine the purchase intent of consumers. | [Objections omitted]…. GM admits that one of the purposes of the clinic related to the 2018- 2023 Chevrolet Traverse (C1YC) was to receive participant feedback. Otherwise, denied. |
| RFA No. 53: One of the purposes for the November 19-21, 2013, consumer clinic related to the 2018- 2023 Chevrolet Traverse (C1YC) was to determine whether potential consumers would buy the vehicle and how much they would pay for it. | [Objections omitted]…. GM admits that one of the purposes of the clinic related to the 2018- 2023 Chevrolet Traverse (C1YC) was to receive participant feedback. Otherwise, denied. |

9

| | |
|---|---|
| RFA No. 54: One of the purposes for the November 19-21, 2013, consumer clinic related to the 2018-2023 Chevrolet Traverse (C1YC) was to gauge consumer reaction to the vehicle's design. | [Objections omitted]…. GM admits that one of the purposes of the clinic related to the 2018- 2023 Chevrolet Traverse (C1YC) was to receive participant feedback. Otherwise, denied. |

Bregenzer Dec. ¶ 5, Ex. 2.

"Instead of denying the request, [GM] attempts to confuse the issue by admitting what was not asked. This is not an acceptable response. [GM] may either admit, deny, or object to the request as it is written. [GM] may not alter the request or rewrite it in order to admit to something that was not asked." *Turner v. California Forensic Med. Grp.*, No. 2:09-CV-3040-GEB-CMK, 2013 WL 1281785, at *3 (E.D. Cal. Mar. 26, 2013). But as shown above, this is exactly what GM has done.

Again, under Rule 36, GM can either admit, deny, or object. And here, GM did none of these. GM did not admit the Public Use RFAs; it admitted its own re-written RFA. GM did not deny the Public Use RFAs; it admitted something it wasn't asked and then denied the rest. Simply put, GM's "responses" are improper and violative of Rule 36. GM should be deemed to have admitted the Public Use RFAs.

**D. GM's Refusal to Provide a Proper Response is Particularly Egregious Given the Testimony of its Employees.**

The apparent reason GM did not comply with Rule 36 is that it understood the consequences of doing so. GM is well-aware of LKQ's commercial exploitation argument; LKQ raised it in pending litigation with GM, in *LKQ v. GM*, Case No. 20-2753 (N.D. Ill. 2020). And GM is also well-aware of the testimony of its employees effectively admitting the very same Public Use RFAs at issue herein. Indeed, a number of GM's witnesses, including GM's Rule 30(b)(6)

10

witness on the consumer clinic topics (Sharon Sheremet)[4], made admissions during their depositions that parallel those sought in the Public Use RFAs, thereby undermining GM's meritless objections and demonstrating that GM could have and should have provided proper responses to the Public Use RFAs:



*See e.g.* Bregenzer Dec. ¶ 7, Ex. 3 (Sheremet Dep. at 64:10-14 (objections omitted)).

*See e.g. id.* (Sheremet Dep. at 65:2-10 (objections omitted)).

*See e.g. id.* (Sheremet Dep. at 65:12-21 (objections omitted)).

---

[4]  Sharon Sheremet was GM's Rule 30(b)(6) designee on, *inter alia*, Matter No. 5, "The facts and circumstances surrounding any and all consumer survey or other consumer feedback regarding the design of the appearance of the 2018-2023 Chevrolet Traverse and the 2019-2023 GMC Sierra, including the right-side fender designs. Bregenzer Dec. ¶ 8.

11

*See e.g. id.* (Sheremet Dep. at 101:10-15 (objections omitted)).



*See e.g. id.* (Sheremet Dep. at 103:19-23 (objections omitted)).

Likewise, one of GM's former employees previously in charge of overseeing and managing the clinics in question made the same admissions parallel to GM's RFAs.

*See e.g.* Bregenzer Dec. ¶ 9, Ex. 4 (Wroblewski Dep. at 22:3-8 (objections omitted)).

*See e.g. id.* (Wroblewski Dep. at 22:10-20 (objections omitted)).

*See e.g. id.* (Wroblewski Dep. at 23:7-11 (objections omitted)).

*See e.g. id.* (Wroblewski Dep. at 23:13-18 (objections omitted)).

And again, another of GM's former employees previously in charge of analyzing the clinic

results and data also made these same admissions.



*See e.g.* Bregenzer Dec. ¶ 10, Ex. 5 (Margarita Dep. at 24:4-15). Accordingly, there is no real dispute over the purposes of GM's consumer clinics and so the Public Use RFAs were the proper vehicle "to save time and expense by narrowing the issues to be tried." *Hankins v. Alpha Kappa Alpha Sorority, Inc.*, No. 19 CV 00147, 2021 WL 10312277, at *5 (N.D. Ill. Feb. 3, 2021) (internal quotations marks and citations omitted).

Accordingly, LKQ respectfully requests this Court either (a) deem the Public Use RFAs admitted, or (b) compel GM to provide proper responses to the Public Use RFAs. In addition, pursuant to Rule 37(a)(5)(A), which provides in pertinent part that, "[i]f the motion is granted— or if the disclosure or requested discovery is provided after the motion was filed—the court ***must***, after giving an opportunity to be heard, require the party… whose conduct necessitated the motion… to pay the movant's reasonable expenses incurred in making the motion, including attorneys fees,"[5] GM should also be compelled to cover LKQ's fees and expenses associated with

---

[5] None of the three exceptions—"(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust"— apply here.

13

this motion.

## V. CONCLUSION

For the foregoing reasons, LKQ respectfully requests this motion be granted and that the Public Use RFAs—RFA Nos. 50-54, 74-78, 98-102, 122-126, 146-150, 170-174, 194-198, 218-222, and 242-246—be deemed admitted, or, in the alternative, that GM be compelled to provide proper responses to the Public Use RFAs, and for such other further relief as this Court deems fit, including ordering GM to pay LKQ's fees and expenses associated with this motion pursuant to Fed. R. Civ. P. 37(a)(5).

Dated: July 2, 2024                                         Respectfully submitted,


By: /s/ *Michael P. Bregenzer*

Barry F. Irwin, P.C.
Michael P. Bregenzer
Daniel Zhang
**IRWIN IP LLP**
150 N. Wacker Drive, Suite 700
Chicago, IL 60606
Tel.: (312) 667-6080
birwin@irwinip.com
mbregenzer@irwinip.com
dzhang@irwinip.com

*Attorneys for Plaintiffs LKQ Corporation & Keystone Automotive Industries, Inc.*

14

**CERTIFICATE OF SERVICE**

      I certify that a copy of the foregoing document was served via ECF on July 2, 2024, upon all counsel of record.

                                                 /s/ *Gloria Rios*
                                                 Gloria Rios