**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LKQ CORPORATION, and | ) | Case No. 1:21-cv-05854 |
| KEYSTONE AUTOMOTIVE | ) | |
| INDUSTRIES, INC. | ) | Honorable Jorge Alonso |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| GENERAL MOTORS COMPANY, | ) | |
| GM GLOBAL TECHNOLOGY | ) | |
| OPERATIONS, LLC, and | ) | |
| GENERAL MOTORS LLC | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
<u>MOTION TO DISQUALIFY FISH & RICHARDSON</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION AND FACTUAL BACKGROUND ..................................................... 1

II.     ARGUMENT ........................................................................................................... 6

     A.     Fish & Richardson's Characterization of ABA Model Rule 1.10 Does Not
            Preclude Disqualification. ....................................................................................... 6

     B.     A Substantial Relationship Exists Between Ms. Rios's Work for Irwin IP and Her
            Work for Fish & Richardson ................................................................................... 9

     C.     Fish & Richardson Has Not and Cannot Rebut the Presumption That Ms. Rios
            "Shared Confidences" Regarding LKQ's Confidential Information. .................. 10

     D.     Fish & Richardson Has Not and Cannot Rebut the Presumption That Ms. Rios
            Has "Shared Confidences" Regarding Her Work for LKQ With Fish &
            Richardson. .......................................................................................................... 11

          1.     Fish & Richardson's affidavits demonstrate that Fish & Richardson
                  inquired into Ms. Rios's work for LKQ. .................................................. 11

          2.     A Plain Reading of Fish & Richardson's affidavits demonstrate that Fish &
                  Richardson inquired into Ms. Rios's experiences with Irwin IP ................ 13

III.    CONCLUSION ...................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Coburn v. DaimlerChrysler Servs. N. Am., L.L.C.*,
   289 F. Supp. 2d 960 (N.D. Ill. 2003) ............................................................. 6, 7, 13

*Cromley v. Board of Educ. of Lockport Tp. High School Dist. 205*,
   17 F.3d 1059 (7th Cir. 1994) ................................................................................ 1

*Hitachi, Ltd. v. Tatung Co.*,
   419 F. Supp. 2d 1158 (N.D. Cal. 2006) ..................................................... 10, 15, 16

*Kapco Mfg. Co. v. C & O Enterprises, Inc.*,
   637 F. Supp. 1231 (N.D. Ill. 1985) ...................................................................... 10

*LaSalle Nat. Bank v. County of Lake*,
   703 F.2d 252 (7th Cir.1983) ............................................................................... 12

*LKQ Corp. v. GM Glob. Tech. Operations LLC*,
   102 F.4th 1280 (Fed. Cir. 2024) ............................................................................ 1

*Medgyesy v. Medgyesy*,
   988 F. Supp. 2d 843 (N.D. Ill. 2013) ................................................................. 1, 8

*Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Servs. N. Am., L.L.C.*,
   No. 03 C 760, 2003 WL 22872142 (N.D. Ill. Dec. 3, 2003) ............................... 6, 7

*Schiessle v. Stephens*,
   717 F.2d 417 (7th Cir. 1983) ...................................................................... 6, 10, 14

*Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*,
   No. 10 C 715, 2011 WL 1748607 (N.D. Ill. May 5, 2011) ..................................... 6

*Ullman v. Denco, Inc.*,
   No. 14-cv-843 SMV/GBW, 2015 WL 11111287 (D. N.M. Apr. 22, 2015)................. 8, 9, 14

*United States v. Goot*,
   894 F.2d 231 (7th Cir. 1990) ................................................................................ 6

*Van Jackson v. Check 'N Go of Illinois, Inc.*,
   114 F. Supp. 2d 731 (N.D. Ill. 2000) .................................................................. 14

**Rules**

ABA Model Rule 1.0(k) ........................................................................................... 7

ABA Model Rule 1.10 ........................................................................................... 5, 7

ABA Model Rule 5.3 ................................................................................................................... 1

## I.    INTRODUCTION AND FACTUAL BACKGROUND

The Court has a "duty 'to safeguard the sacrosanct privacy of the attorney-client relationship[.]" *Medgyesy v. Medgyesy*, 988 F. Supp. 2d 843, 847 (N.D. Ill. 2013) (quoting *Cromley v. Board of Educ. of Lockport Tp. High School Dist. 205*, 17 F.3d 1059, 1066 (7th Cir. 1994). The purpose of this duty is to uphold "the transcendent goal of maintaining the public trust in the propriety of legal proceedings." *Id.* Attorneys, and the paralegals they supervise, share in these same professional and ethical obligations. ABA Model Rule 5.3.[1] Notwithstanding its obligations, it appears that Fish & Richardson has created a situation in which LKQ's confidential and privileged information is at risk. The only solution is to disqualify Fish & Richardson.

GM and LKQ have been litigating the invalidity of GM's design patents for years. Since 2019, LKQ filed (a) nine *inter partes* reviews ("IPRs") and eleven post-grant reviews ("PGRs") challenging the validity of GM design patents, (b) this litigation, (c) a related litigation in this district (*LKQ v. GM*, Case No. 20-cv-02753) ("GM DJ1"),[2] and (d) a Federal Circuit appeal that resulted in an *en banc* change to design patent obviousness standards. *LKQ Corp. v. GM Glob. Tech. Operations LLC*, 102 F.4th 1280 (Fed. Cir. 2024). For all of the foregoing matters ("GM Litigations"), LKQ has been represented by Irwin IP and GM by Fish & Richardson. Bregenzer Dec. ¶ 4, Ex. 1.

From January 2022 until February 2025, Gloria Rios was Irwin IP's primary paralegal for all LKQ matters handled by Irwin IP. *Id.* ¶ 5. In fact, more than 80% of Ms. Rios's billable time at Irwin IP was spent on LKQ matters, including matters adverse to GM. *Id.* ¶ 6. And in that regard, Ms. Rios billed thousands of hours working on matters for LKQ against automakers,

---

[1]    Pursuant to L.R. 83.50, the "[a]pplicable disciplinary rules are the Model Rules adopted by the American Bar Association."

[2]    LKQ will also be filing a substantially similar motion before Judge Daniel in GM DJ1.

including GM, related to automotive design patents. *Id*. Indeed, Ms. Rios billed hundreds of hours on this specific case. *Id*. And as part of those billable hours, Ms. Rios attended numerous internal team meetings discussing LKQ's litigation strategies related to GM, was copied on attorney-client communications between Irwin IP and LKQ, was an integral part of collecting and reviewing LKQ's internal confidential documents for production and depositions in this case, and had unfettered and unlimited access to all attorney work product for all LKQ matters handled by Irwin IP, including this case. *Id*. ¶ 7. Ms. Rios's involvement in Irwin IP's representation of LKQ cannot be overstated.

GM was well-aware of Ms. Rios's role in the GM litigations. Virtually every single one of the documents and pleadings served by LKQ in these matters from January of 2022 through February of 2025, was served by Ms. Rios and documented on the applicable certificate of service. Watson Dec. ¶ 4. Ms. Rios sent hundreds of emails to Fish & Richardson. Juarez Dec. ¶ 5. And Fish & Richardson sent Ms. Rios hundreds of emails too. *Id*.

Notwithstanding Ms. Rios's role in the GM Litigations and Fish & Richardson's knowledge thereof, on January 6, 2025, Fish & Richardson targeted Ms. Rios in an effort to lure her away from Irwin IP. More specifically, Fish & Richardson employee Dene Maloney—Talent Acquisition Lead—directly contacted Ms. Rios via LinkedIn. Bregenzer Dec. ¶ 8, Ex. 2 at 8 (Rios Affidavit at ¶ 7). Notably, while Fish & Richardson provided LKQ with several affidavits in an attempt to justify its behavior, it did not provide an affidavit from Ms. Maloney. *See generally, id*. In other words, Fish & Richardson has not explained why, out of the thousands of Chicago-based paralegals, Fish & Richardson specifically sought to hire Ms. Rios. Of course, the explanation seems clear; Fish & Richardson desired Ms. Rios's unique knowledge concerning this case and LKQ's confidential information and legal strategies garnered while working for LKQ.

2

Worse, although Fish & Richardson employs over 350 attorneys and is estimated to have more than 100 paralegals (Watson Dec. ¶ 5), Fish & Richardson opted to have Louis Fogel, counsel of record in this litigation, and Janette Riebe, Fish & Richardson's primary paralegal in this litigation, interview Ms. Rios.  Bregenzer Dec. ¶¶ 8, 15, Ex. 2 at 9 (Rios Affidavit ¶¶ 11-12). Notably, Ms. Rios continued to exchange emails with both Mr. Fogel and Ms. Riebe on issues related to this case after she was contacted by Fish & Richardson.  Juarez Dec. ¶ 6.

Although Fish & Richardson began discussing the possibility of Ms. Rios joining Fish & Richardson on January 8, 2025 (Fish & Richardson first contacted her on January 6), Fish & Richardson did not implement an "ethical wall" between itself and Ms. Rios until February 21, 2025—the Friday prior to Ms. Rios's February 24, 2025 start date at Fish & Richardson. Bregenzer Dec. ¶ 4, Ex. 1 at 3-4.

Putting this deficiency aside, Fish & Richardson's too little, too late "ethical wall" is deficient for an additional reason.  It only listed GM's involvement in LKQ's cases.  But Ms. Rios also has knowledge of at least five other design patent litigations between LKQ and other automakers, and LKQ's confidential and privileged information related thereto.[3]  The issues in those cases were nearly identical to the issues in this case.

Ms. Rios never informed Irwin IP that she was leaving Irwin IP for Fish & Richardson and did not attend an exit interview despite repeated requests that she do so.  Bregenzer Dec. ¶ 9; Holubar Dec. ¶¶ 4-6.  Similarly, Fish & Richardson never disclosed to Irwin IP that it had hired Ms. Rios to work for counsel of record in this litigation, even though Ms. Rios continued to work

---

[3]        These cases include (1) *LKQ v. Kia*, Case No. 21-cv-03166 (N.D. Ill. 2021),  (2) *LKQ v. Hyundai*, Case No. 21-cv-03167 (N.D. Ill. 2021), (3) *Honda v. LKQ*, Case No. 21-cv-08210 (C.D. Cal. 2021), (4) *In the Matter of Certain Replacement Automotive Lamps*, Inv. No. 337-TA-1291 (I.T.C. 2021), and (5) *In the Matter of Certain Replacement Automotive Lamps*, Inv. No. 337-TA-1292 (I.T.C. 2021), for which Ms. Rios was the primary paralegal during her time at Irwin IP.

for Irwin IP on this specific case for weeks after Fish & Richardson knew that she would be joining them. Bregenzer Dec. ¶¶ 9-10.

To make matters worse, on March 10, 2025, Irwin IP discovered that shortly after receiving her offer from Fish & Richardson on January 21, Ms. Rios **permanently** deleted at least 17,000 emails from her work email account. Juarez Dec. ¶¶ 4, 7. This was no accident. First, Ms. Rios deleted the emails in her "Inbox," "Sent," and other email folders (she also deleted these folders too). *Id*. ¶¶ 4, 9. Then, she deleted all of these emails a second time from her "Deleted" folder. *Id*. And finally, Ms. Rios then purged all of these emails from the "Recovery" folder. *Id*. Indeed, during her final week at Irwin IP, instead of transitioning matters to Irwin IP's other paralegal and staff, she instead spent hours over the course of multiple days just deleting her emails. *Id*. ¶¶ 7-8. These deletions were not made in the ordinary course of business and are not consistent with Irwin IP policies. *Id*. ¶¶ 10-11. Indeed, Irwin IP cannot conceive of an innocent explanation for these deletions. Was Ms. Rios trying to cover-up her communications with Fish & Richardson? Did Ms. Rios seek to prevent Irwin IP and LKQ from using her work product? In any event, Ms. Rios's conduct evinces a clear understanding that she was engaged in harmful and unethical conduct and wanted to cover her tracks.

Prior to discovering Ms. Rios's mass deletion of emails, Irwin IP contacted Fish & Richardson via letter dated February 26, 2025, the day after it learned that Ms. Rios had joined Fish & Richardson. Bregenzer Dec. ¶ 12, Ex. 3. In its letter, Irwin IP asked Fish & Richardson whether it planned on withdrawing from the *LKQ v. GM* litigations, and if not, to provide all evidence as to how Fish & Richardson would rebut a presumption of shared confidences with Ms. Rios. *Id.* Fish & Richardson responded on February 28, 2025, claiming that it was not obligated

to provide any notice to Irwin IP, and that the ABA and Illinois Rules of Professional Conduct preclude any relief that LKQ might seek. *Id*. ¶ 4, Ex. 1.

LKQ responded on March 3, 2025, explaining that Fish and Richardson's characterization of the ethical rules was in conflict with applicable case law from this Court and the Seventh Circuit. *Id*. ¶ 13, Ex. 4. The fact that Fish & Richardson, when trying to justify its actions, failed to apprehend the correct legal standard, casts substantial doubt on its claim that it can be trusted to protect LKQ's confidential information. *Id.*

Fish & Richardson responded on March 10, 2025, arguing again that the ethical rules preclude disqualification. *Id*. ¶ 8, Ex. 2 at 1-3. But as will be explained below, Fish & Richardson is wrong. ABA Model Rule 1.10, in all of its forms and comments, does not preclude disqualification in this instance just because Ms. Rios is a paralegal (Fish & Richarson's current justification for its actions). Rather, the question is whether the methods of screening were sufficient, evaluated on a case-by-case basis. And Fish & Richardson's methods were not.

Specifically, as part of its March 10, 2025 letter, Fish & Richardson provided LKQ affidavits from six of its employees in an attempt to demonstrate that Fish & Richardson complied with its ethical obligations by (1) screening Ms. Rios from the *LKQ v. GM* matters, and (2) not discussing any of the *LKQ v. GM* matters. *Id*. ¶ 8, Ex. 2. But as will be discussed further below, these affidavits are insufficient to prevent Fish & Richardson's disqualification.

Under the law of the Seventh Circuit, (1) GM cannot demonstrate that there is no substantial relationship between the prior and present representations, (2) GM has failed to rebut any presumption of shared confidences with respect to the prior representation, and (3) GM cannot rebut the presumption of shared confidences with respect to the present representation. GM's

screening procedures are insufficient. Accordingly, LKQ respectfully requests that the Court grant

LKQ's Motion and disqualify Fish & Richardson from its representation of GM in this case.

## II.    ARGUMENT

The Seventh Circuit has set forth a three-part sequential test to determine whether

disqualification of a firm via imputation (courts also use the term "infection" or "vicarious

disqualification") is appropriate where representation has "'switched sides' to become adverse to

that client later:"

> First, does a "substantial relationship" exist between the subject matter of the prior and
> present representations? Second, if so, has the presumption of shared confidences with
> respect to the prior representation been rebutted? Third, if not, has the presumption of
> shared confidences with respect to the present representation been rebutted?

*United States v. Goot*, 894 F.2d 231, 235 (7th Cir. 1990) citing *Schiessle v. Stephens*, 717 F.2d

417, 420-21 (7th Cir. 1983); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011

WL 1748607, at *5 (N.D. Ill. May 5, 2011). This test also applies where a party seeks

disqualification because of "unfair access to confidential information." *Coburn v.*

*DaimlerChrysler Servs. N. Am., L.L.C.*, 289 F. Supp. 2d 960, 964 (N.D. Ill. 2003).

The three-part "test applies with equal force to non-lawyers: paralegals, secretaries and

clients." *Coburn*, 289 F. Supp. 2d at 964 (partially granting a motion to disqualify due to

connections with an administrative assistant); *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler*

*Servs. N. Am., L.L.C.*, No. 03 C 760, 2003 WL 22872142, at *1 (N.D. Ill. Dec. 3, 2003) (same).

### A.    Fish & Richardson's Characterization of ABA Model Rule 1.10 Does Not
Preclude Disqualification.

After back-and-forth discussions regarding the applicable governing standards, Fish &

Richardson's Chief Legal Risk Officer has settled on a defense: that (1) "Comment 4 to ABA

Model Rule 1.10 was added in 2021" and the "cases [LKQ has] cited pre-date this amendment and

do not consider Comment 4;" (2) "the issue of rebutting any presumption of shared confidential information does not even arise, as [Fish & Richardson] has strictly adhered to the explicit requirements of ABA Model Rule 1.10"; and (3) the "safeguards [Fish & Richardson] implemented are fully aligned with the black-letter language of ABA Model Rule 1.10." Bregenzer Dec. ¶ 8, Ex. 2. Fish & Richardson is wrong on all counts.

***First***, Comment 4 to ABA Model Rule 1.10 was added long before 2021. Bregenzer Dec. ¶ 14, Ex. 5. It was proposed in 2001, and the proposal was adopted in February 2002. *Id.* Accordingly, LKQ's "paralegal cases," including *Coburn* and *Ridge*, post-date Comment 4 to the ABA Model Rule and still apply here.

***Second***, Fish & Richardson's contention that it need not rebut any presumption of shared confidential information is contrary to law and the plain language of Comment 4 to ABA Model Rule 1.10, which provides:

> The rule in paragraph (a) also does not prohibit representation by others in the law firm where the person prohibited from involvement in a matter is a nonlawyer, such as a paralegal or legal secretary. Nor does paragraph (a) prohibit representation if the lawyer is prohibited from acting because of events before the person became a lawyer, for example, work that the person did as a law student. ***Such persons, however, ordinarily must be screened from any personal participation in the matter to avoid communication to others in the firm of confidential information that both the nonlawyers and the firm have a legal duty to protect.*** See Rules 1.0(k) and 5.3.

Comment 4 to Rule 1.10 of the ABA Model Rules (emphasis added).

Further, Rule 1.0(k) of the ABA Model Rules provides that "'Screened' denotes the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are ***reasonably adequate under the circumstances to protect information*** that the isolated lawyer is obligated to protect under these Rules or ***other law***." Rule 1.0(k) of the ABA Model Rules (emphasis added). "Other law" includes the discretion of the courts. *Medgyesy*, 988 F. Supp. 2d at 850 (granting motion to disqualify because "[a]llowing Mr. Tancredi to participate

7

further in this case would result in an appearance of impropriety"). In other words, Fish & Richardson *must* show that it has properly, timely, and reasonably screened Ms. Rios.

Courts in other districts have walked through this same analysis. In *Ullman v. Denco, Inc.*, the court was faced with the same question here: "is Gonzales' conflict of interest as a paralegal imputed to the entire firm?" No. 14-cv-843 SMV/GBW, 2015 WL 11111287 at \*3 (D. N.M. Apr. 22, 2015). There, the court analyzed Comment 4 to the N.M. R. Prof'l Conduct, which is substantively identical to Comment 4 of the ABA Model Rules. *Id.* In *Ullman*, while the court concluded that there was not "per se disqualification" because a paralegal was at issue, "the next issues are (1) whether a screen is an appropriate remedy, and (2) whether a screen would be effective under the circumstances of this case." *Id.* at \*4. And for a screen to "avoid the necessity of disqualification, *it must be effective*." *Id.* at \*5 (emphasis added). The *Ullman* court found that the following factors weighed in favor of disqualification of a firm due to a paralegal:

> No time has elapsed between the matters because they are identical. In fact, less than a week transpired between the end of Gonzales' employment with Plaintiffs' counsel and her first day with HMM…. HMM is a relatively small firm comprised of nine attorneys, three of which are in a 'senior' status.… Three of the non-senior attorneys have entered their appearance in the instant case. Moreover, all attorneys and support staff for HMM work in the same building.

*Id.* at \*6. Here too: (1) no time has elapsed between the GM/LKQ cases because they are identical, (2) less than two weeks transpired between the end of Ms. Rios's employment with Irwin IP and her first day with Fish & Richardson, (3) Fish & Richardson's Chicago office will be small, comprised of a limited number of attorneys, (4) the leader of which, Mr. Fogel, is counsel of record in the current case, and (5) Ms. Rios and Mr. Fogel will work in the same small office. Accordingly, the mere fact that there was a screen does not end the inquiry. Fish & Richardson's behavior must be examined under the three-part test on a case-by-case basis to determine the sufficiency of their methods. And under the analysis of *Ullman*—which, while not controlling, is

8

persuasive—the proper answer here is disqualification because GM's too little, too late efforts to screen simply cannot—and almost certainly have not—protected LKQ's confidential information.

**Third**, Fish & Richardson claims that its safeguards were sufficient under the Model Rules. Again, Fish & Richardson is wrong. In *Ullman*, the court disqualified the law firm that hired away opposing counsel's paralegal, ***even though*** the "proposed screening rules are comprehensive… and, sometimes exceed, screens approved in other cases." *Id.* at *7. And as will be discussed further below, in the context of the three-part test, even comprehensive screens by firms similar to Fish & Richardson have been found insufficient given the facts facing the court.

### B. A Substantial Relationship Exists Between Ms. Rios's Work for Irwin IP and Her Work for Fish & Richardson.

Turning to the three-part test prescribed by the Seventh Circuit, there can be no dispute, and indeed, GM does not dispute, that there is a "substantial relationship" between Ms. Rios's prior work for LKQ and Fish & Richardson's work for GM. It is the exact same case. Bregenzer Dec. ¶ 8, Ex. 2 at 8-9, 16-17 (Rios Affidavit ¶ 7; Fogel Affidavit ¶ 5). "The only factor that has changed is that [Ms. Rios] is now a [paralegal] of the [Fish & Richardson] firm rather than the [Irwin IP] firm." *Schiessle*, 717 F.2d at 420. Under these circumstances, the Seventh Circuit has found "no difficulty in concluding that the representation involved is substantially related." *Id. See also*, *Kapco Mfg. Co. v. C & O Enterprises, Inc.*, 637 F. Supp. 1231, 1237 (N.D. Ill. 1985) ("there is no doubt that a substantial relationship exists because the 'prior and present representations' concern the same ongoing litigation. Thus, there can be no real dispute that there is a substantial relationship between the prior and present representations"). *See also Hitachi, Ltd. v. Tatung Co.,* 419 F. Supp. 2d 1158, 1164 (N.D. Cal. 2006) ("the Court finds that disqualification is warranted, in part because this action and the action in which Mr. Hong represented Hitachi are so substantially related – indeed, they are nearly identical. The same patents are at issue in both

9

cases… Tatung has not cited a single case in which a court held that an ethical wall prevented the vicarious disqualification of a firm where the two matters were as closely related as the two at issue here[.]").

Simply put, because Ms. Rios was the primary paralegal on this exact case, there is a substantial relationship between Ms. Rios's work for LKQ and Fish & Richardson's representation of GM in this case.

### C. Fish & Richardson Has Not and Cannot Rebut the Presumption That Ms. Rios "Shared Confidences" Regarding LKQ's Confidential Information.

The second step in the disqualification analysis is whether "the presumption of shared confidences with respect to the prior representation [has] been rebutted[.]" *Goot*, 894 F.2d at 235. "The evidence presented to rebut this presumption must 'clearly and effectively' demonstrate that the attorney in question had no knowledge of the information, confidences and/or secrets related by the client in the prior representation." *Schiessle*, 717 F.2d at 420.

Here too, it cannot be disputed that Ms. Rios was privy to LKQ's confidential information across three years of litigation spanning multiple matters. And in her role as the lead paralegal for this case, Ms. Rios had access to (i) all of LKQ's confidential documents related to this case, (ii) LKQ's attorney-client communications with its outside law firm, Irwin IP LLP, and (iii) internal attorney work product related to this case including but not limited to LKQ's litigation strategy in this case and its overall litigation strategy related to all on-going disputes with GM. Bregenzer Dec. ¶¶ 5-7. GM cannot rebut the presumption that Ms. Rios knew of LKQ's confidential information. Indeed, in neither of the two letters provided by Fish & Richardson after LKQ raised this issue does Fish & Richardson challenge the second step of the three-step analysis. *Id.* ¶¶4, 8. Exs. 1-2.

**D.** **Fish & Richardson Has Not and Cannot Rebut the Presumption That Ms. Rios Has "Shared Confidences" Regarding Her Work for LKQ With Fish & Richardson.**

The third and final step of the disqualification analysis is whether Fish & Richardson can rebut the presumption that Ms. Rios has shared LKQ confidential information with it.  *Goot*, 894 F.2d at 235.  To do so, Fish & Richardson "must submit 'objective and verifiable evidence' that 'clearly and effectively' rebuts each presumption."  *Coburn*, 289 F. Supp. 2d at 964 quoting *Schiessle*, 717 F.2d at 420–21.  Notably, "'[a] very strict standard of proof must be applied to the rebuttal of this presumption... and ***any doubts as to the existence of an asserted conflict must be resolved in favor of disqualification***."  *Goot*, 894 F.2d 231, 235 (7th Cir. 1990) quoting *LaSalle Nat. Bank v. County of Lake*, 703 F.2d 252, 257 (7th Cir.1983) (emphasis added).

Presumably, Fish & Richardson seeks to rely on its affidavits to demonstrate that (1) Ms. Rios has not yet shared any client confidences, and (2) Ms. Rios will be prevented via an ethical wall, in the future, from sharing LKQ's confidential information with Fish & Richardson. Bregenzer Dec. ¶8, Ex. 2.  But Fish & Richardson's affidavits are insufficient, just like its deficient ethical wall.

**1.** **Fish & Richardson's affidavits demonstrate that Fish & Richardson inquired into Ms. Rios's work for LKQ.**

***First,*** Fish & Richardson did not screen Ms. Rios, or its attorneys, until ***after*** she had interviewed with Mr. Fogel—counsel of record in this case—and Ms. Riebe—the lead paralegal for this case, and indeed, until the Friday before Ms. Rios started work at Fish & Richardson's Chicago office, on February 21, 2025.  Bregenzer Dec. ¶ 4, Ex. 1 at 3-4.  This is because Fish & Richardson targeted Ms. Rios because of where she worked and because of her work for LKQ. And while Mr. Fogel's affidavit states that he instructed Ms. Rios not to discuss GM/LKQ matters, a court in this district has found such instructions ineffective.  *Coburn*, 289 F. Supp. 2d at 966

(N.D. Ill. 2003) (ordering disqualification even though the attorney "told her not to tell him anything about her work" because "[t]his instruction does not 'clearly and effectively' demonstrate that [the attorney] did not receive and is not likely to receive any confidential information").

**Second**, Fish & Richardson admits that during the interview process, Ms. Rios discussed with Ms. Riebe and Mr. Fogel her "paralegal experience, including, but not limited to… general discovery preparation, legal research, electronic filings, and trial preparation and support." Bregenzer Dec. ¶ 8, Ex. 2. But to discuss discovery preparation, filings, and trial preparation, GM necessarily asked about her work for LKQ; again, with the exception of a handful of small matters—predominantly *pro bono* matters—the vast majority of Ms. Rios's billable time was spent on LKQ design patent litigation, including this specific case. *Id.* ¶ 6. It simply strains credulity that Mr. Fogel and Ms. Reibe targeted Ms. Rios specifically for hire, out of all the possible paralegals in Chicago, yet did not discuss her experiences at Irwin IP, which again, were primarily design patent litigation work for LKQ. Further, as an interviewee for a job, Ms. Rios had a personal incentive to discuss how well she managed and worked on her past matters. *See e.g. Coburn*, 289 F. Supp. 2d at 966 ("Bradley, as a potential plaintiff in this case, has a personal incentive to transmit confidential information").

**Third**, while the Fish & Richardson "ethical wall" and affidavits attempt to be explicit on discussing LKQ and GM litigations, they are silent as to other automotive design patent litigations handled by Ms. Rios on behalf of LKQ, including massive, multi-venue automotive design patent litigations involving Hyundai, Kia, and Honda.[4] How LKQ litigated those cases, and Ms. Rios's

---

[4]     The affidavits provided by Fish & Richardson claim that no one discussed LKQ. Bregenzer Dec. ¶ 8, Ex. 2 at 8-9, 13-14, 16-17 (Rios Affidavit ¶ 7, Riebe Affidavit ¶ 7, Fogel Affidavit ¶ 7). But again, it is impossible for Ms. Rios to discuss her experience with discovery, research, and trial without relying on her experience helping litigate LKQ cases, and given Fish & Richardson's knowledge that Ms. Rios spent a significant amount of her time working for LKQ, it was not necessary to reference LKQ by name in order to convey confidential LKQ information and litigation strategies.

experience in helping litigate those cases against other automakers, is unquestionably relevant to these GM litigations and her "paralegal experience, including, but not limited to… general discovery preparation, legal research, electronic filings, and trial preparation and support."

**Fourth**, as discussed above, LKQ cannot be sure of what Ms. Rios discussed with Fish & Richardson, given that Ms. Rios deleted more than **17,000** emails from her work account. (Irwin IP knows that there were more than 17,000 instances in which emails were deleted, but each instance could have involved deletion of more than one email. Juarez Dec. ¶ 7-8).

In sum, Fish & Richardson cannot rebut the presumption that confidences have **already** been shared and its too little, too late efforts to screen Ms. Rios—even assuming a screen could be effective given the size of Fish & Richardson's Chicago office (it cannot)—are insufficient.

### 2. *A Plain Reading of Fish & Richardson's affidavits demonstrate that Fish & Richardson inquired into Ms. Rios's experiences with Irwin IP.*

Next, Fish & Richardson argues that Ms. Rios will be screened via an "ethical wall," which will prevent Ms. Rios from accessing any files or case information related to the *LKQ v. GM* litigations. Bregenzer Dec. ¶ 4, Ex. 1. But the sufficiency of Fish & Richardson's screen must be determined on a "case-by-case basis." *Schiessle*, 717 F.2d at 421. And those determinations are made based on factors including, "the size and structural divisions of the law firm involved, the likelihood of contact between the 'infected' attorney and the specific attorneys responsible for the present representation[.]" *Id.* In fact, "[t]he small size of the firm also weighs heavily against an effective screen…. In such a small firm, it is questionable whether a screen can ever work." *Van Jackson v. Check 'N Go of Illinois, Inc*., 114 F. Supp. 2d 731, 733 (N.D. Ill. 2000). Because Fish & Richardson's Chicago office will open with a very limited number of attorneys, any screen would be ineffective here. Watson Dec. ¶ 6; *see e.g. Ullman*, 2015 WL 11111287 at *3.

13

The Seventh Circuit is not alone in questioning the efficacy of an ethical wall. In *Hitachi*, the Northern District of California disqualified Greenberg Traurig for hiring an attorney that had previously represented the other side.[5] Notably, Greenberg's screening procedures were nearly identical to Fish & Richardson's here:

> Greenberg promptly recognized and attempted to resolve the ethical conflict. Greenberg immediately initiated an ethical wall, instituting its screening procedures prior to entering an appearance in this case without being compelled by Hitachi. Greenberg isolated Mr. Hong from the present case by warning him and other members of the firm, denied him access to case files, and instituted a closed door policy for discussions relating to the present case. Short of transferring the matter to another office, which they have offered if the Court finds necessary, Greenberg could not substantially improve the efficacy of their ethical screening procedures.

*Hitachi*, 419 F. Supp. 2d at 1164. The court nevertheless disqualified Greenberg in its entirety. It reasoned that an ethical wall was "insufficient" because:

- "Mr. Hong was involved with most areas of the case [at his prior firm] and even attended meetings concerning case strategy and preparations for mediation." *Id.* at 1159. Here too, Ms. Rios routinely attended LKQ strategy meetings and had unfettered access to all LKQ attorney work product information.

- "This action and the action in which Mr. Hong represented Hitachi are so substantially related – indeed, they are nearly identical. The same patents are at issue in both cases." Here too, two out of five of Mr. Fogel's active litigations in this District are identical to the cases that Ms. Rios worked on during her time at Irwin IP.

- It was "troubling that the present case is handled primarily out of the same office that Mr. Hong is located[.]" Here too, Ms. Rios will be working out of the same office where Mr. Fogel, counsel of record in the GM Litigations, will be located.

- "[T]he close proximity of Mr. Hong and the attorneys handling the matter undoubtedly increases the unease of Hitachi that their confidentiality will be

---

[5] Although *Hitachi* only explicitly discusses California Professional Conduct Rule 3-310(E) governing conflicts of interests with respect to the originating conflict, *Hitachi* also discusses cases regarding vicarious disqualification, or imputation, in line with the "substantial relationship" test discussed in the Seventh Circuit. LKQ understands that the professional rules of conduct have been modified over the years, but LKQ cites *Hitachi* as a persuasive authority of circumstances in which an ethical wall may be insufficient to prevent disqualification.

14

improperly disclosed… and increases the actual risk of intentional or unintentional disclosure of Hitachi confidential information[.]" Here, too, the close proximity of Ms. Rios and the attorneys handling the matter undoubtedly increases the unease of LKQ that their confidentiality will be improperly disclosed, and increases the actual risk of unintentional or intentional disclosure of LKQ confidential information. *See e.g.,* Watson Dec. at ¶ 6.

- "The small size of Greenberg's Silicon Valley intellectual property department exacerbates the problem of proximity[.]" Here, too, the small size of Fish & Richardson's new Chicago office exacerbates the problem of proximity (it appears that Fish & Richardson's Chicago office will initially open with a limited number of attorneys – approximately four. *See e.g.* Watson Dec. at ¶ 6);

- "Mr. Hong likely has substantial contact with the Greenberg intellectual property attorneys handling this case." Here, too, Ms. Rios has substantial contact with Mr. Fogel.

- "Greenberg has not otherwise isolated Mr. Hong from the [instant litigation's] legal team." Here, too, Fish has not otherwise isolated Ms. Rios from GM's legal team.

The court went on to conclude that the same screening procedures used by Fish & Richardson here were "***insufficient to adequately protect [] confidential information and prevent the appearance of impropriety.***" *Hitachi*, 419 F. Supp. 2d at 1165. This Court should do the same.

## III. CONCLUSION

For the foregoing reasons, LKQ respectfully requests that this Court grant LKQ's motion to disqualify Fish & Richardson.

Dated: March 20, 2025                    Respectfully submitted,


                                         By: /s/ *Michael P. Bregenzer*
                                         Barry F. Irwin, P.C.
                                         Michael P. Bregenzer
                                         Daniel Zhang
                                         **IRWIN IP LLP**
                                         150 N. Wacker Drive, Suite 700
                                         Chicago, IL 60606
                                         Tel.: (312) 667-6080
                                         birwin@irwinip.com
                                         mbregenzer@irwinip.com
                                         dzhang@irwinip.com

                                         *Attorneys for Plaintiffs LKQ Corporation &*
                                         *Keystone Automotive Industries, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document was served via ECF on March 20, 2025, upon all counsel of record.

*/s/ Jennifer Frangella*
Jennifer Frangella