UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LKQ Corporation and Keystone Automotive Industries, Inc., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 21-cv-5854 |
| v. | ) ) | Hon. Jorge L. Alonso |
| General Motors Company, GM Global Technology Operations, LLC, and General Motors LLC, | ) ) ) ) | |
| Defendants. | ) | |

### Memorandum Opinion and Order

This action was brought by LKQ Corporation and Keystone Automotive Industries, Inc. (collectively, "LKQ") against General Motors Company, GM Global Technology Operations, LLC, and General Motors LLC (collectively, "GM"). Before the Court are LKQ's motion for summary judgment against GM on the issue of invalidity, GM's motions for summary judgment on the issues of patentability and obviousness, LKQ's motion for leave to file supplemental authority, and multiple related motions to seal. For the reasons stated below, the Court denies LKQ's motion for summary judgment [221], grants GM's motion for summary judgment on the issue of patentability [205], denies GM's motion for summary judgment on the issue of obviousness [214], grants LKQ's motion for leave to file supplemental authority [342], and grants the parties' motions to seal [203] [212] [240] [248] [276] [284] [291] [298].

### Background

LKQ initiated this declaratory judgment action against GM seeking a determination that LKQ does not infringe two of GM's design patents: U.S. Patent Nos. D818,406 (the "'406 Patent")

and D828,256 (the "'256 Patent"). In turn, GM filed counterclaims alleging that GM had infringed the at-issue patents.

The '256 patent contains one claim for an ornamental design for a front vehicle fender. It was filed on June 29, 2017 and issued on September 11, 2018. The patent is depicted as below:





The '406 patent contains one claim for an ornamental design for a front vehicle fender. It was filed on October 14, 2016 and issued on May 22, 2018. The patent is depicted as below:



Because the three separate motions for summary judgment concern discrete issues, the Court lays out background as relevant to each motion below.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the evidentiary record and views all the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder

which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Further, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Id.* at 248.

## Discussion

For the reasons that follow, the Court grants GM's motion for summary judgment on the issue of patentability, denies GM's motion for summary judgment on the issue of obviousness, and denies LKQ's motion for summary judgment.

### I. Patentability

GM asks the Court to grant summary judgment on LKQ's "article of manufacture" and "fragment of a design" challenges to the patentability of the at-issue patents. 35 USC § 171, provides that "[w]hoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title." LKQ argues that the patents are invalid because (1) the design is not applied to an "article of manufacture" as the fender which it is applied to is not complete in itself and (2) GM invented a full car, so the patents referencing only the fender of the car do not disclose all material aspects of GM's invented design but only a "fragment of a design." Both arguments make the same critical and flawed assumption: that a design patent is invalid as to a component part.

LKQ's article of manufacture argument is foreclosed by binding law. The Supreme Court has held that the fact that a component is later "integrated into a larger product" does not mean that it is not an article of manufacture. *Samsung Elecs. Co. v. Apple Inc.*, 580 U.S. 53, 60 (2016).

LKQ does not and cannot distinguish this case, a fact which it seems to recognize. (ECF Nos. 211-21 at 111 n.22 (LKQ's Final Invalidity Contentions stating that "LKQ believes that there is a non-frivolous argument for extending, modifying, or reversing existing law or establishing new law regarding the patentability of component parts"); 255 at 5 (acknowledging Supreme Court precedent which "suggest[s] that an article of manufacture can be effectively anything.").) Accordingly, the Court grants GM's motion as to LKQ's article of manufacture theory.

LKQ's fragment of a design argument fares no better. LKQ argues that GM designs vehicles as a whole without designing fenders independently, which precludes patentability. This argument fails for two reasons. First, 35 USC § 171 contains no text which even arguably creates such a limitation on patentability. *LKQ Corp. v. Gen. Motors Co.*, No. 20 CV 2753, 2024 WL 4093240, at *11 (N.D. Ill. May 17, 2024) ("Section 171 does not speak to the scope of a claimed design, and the text of the statute contains no requirement that a design cannot relate to a component part of a product.") Further, binding law forecloses LKQ's argument. The Federal Circuit has explained, in the context of automobile design, "Ford *could* properly have claimed its designs as applied to the entire [truck] or as applied to the hood and headlamp" and that "Ford chose to claim designs as applied to portions of particular components, and the law permits it to do so." *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 930 F.3d 1314, 1324 (Fed. Cir. 2019) (emphasis in original) (citing *Samsung*, 580 U.S. at 59–61); *see also Application of Zahn*, 617 F.2d 261, 267 (C.C.P.A. 1980) (holding that a claim should not be rejected under 35 USC § 171 because only a portion of a tool was claimed as the design). LKQ provides no convincing argument distinguishing this precedent. Accordingly, the Court grants summary judgment in GM's favor as to patentability under 35 USC § 171.

**II.    Obviousness**

5

Next, GM moves for summary judgment against LKQ's argument that the at-issue patents are invalid as obvious in light of prior art. 35 USC § 103 provides:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

The Federal Circuit has recently put forward a new and more flexible test to analyze the question of obviousness, holding that courts should consider (1) "the scope and content of the prior art," (2) "differences between the prior art designs and the design claim at issue," (3) "the level of ordinary skill in the pertinent art," and (4) "where a primary reference alone does not render the claimed design obvious . . . some record-supported reason (without hindsight) that an ordinary designer in the field of the article of manufacture would have modified the primary reference with the feature(s) from the secondary reference(s) to create the same overall appearance as the claimed design." *LKQ Corp. v. GM Glob. Tech. Operations LLC*, 102 F.4th 1280, 1298–1299 (Fed. Cir. 2024). GM argues that LKQ has not established the fourth element of this test because the only evidence it puts forward relies on GM's brand character and feedback from customer clinics and surveys, which were not available to the public and which are either impermissible hindsight or an attempt to negate the patent by the manner in which the invention was made. The Court holds that summary judgment is inappropriate because, even assuming that GM is correct that such information cannot be used to demonstrate the motivation of a Designer of Ordinary Skill in the Art ("DOSA,")[1] LKQ has provided other evidence sufficient to do so at this stage.

---

[1] The Court does not decide this issue at this time, as it is not necessary to do so in deciding the present motion. GM is free to move to exclude this evidence through a motion *in limine* closer to trial after the parties meet and confer on the issue.

6

"The presence or absence of a motivation to combine references in an obviousness determination is a pure question of fact." *Everstar Merch. Co. v. Willis Elec. Co.*, No. 2023-1686, 2025 WL 1501940, at *2 (Fed. Cir. May 27, 2025); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1359 (Fed. Cir. 2017) ("Also a fact question is whether one of ordinary skill in the art had a motivation to combine the prior art to achieve the claimed combination."). "An obviousness analysis, including whether a motivation to combine exists, is 'expansive and flexible.'" (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415 (2007))). A DOSA's "motivation may be found *implicitly* in the prior art." *Alza Corp. v. Mylan Labs., Inc.,* 464 F.3d 1286, 1291 (2006)); *Adapt Pharma Operations Ltd. v. Teva Pharms. USA, Inc.,* 25 F.4th 1354, 1369 (Fed. Cir. 2022) (holding that the "teaching of prior art" alone, without expert testimony, can support a finding of motivation to combine); *Forest Lab'ys, LLC v. Sigmapharm Lab'ys, LLC*, 918 F.3d 928, 934 (Fed. Cir. 2019) ("The motivation can be found explicitly or implicitly in the prior art references themselves").

And in the context of demonstrating a motivation to combine primary and secondary references to reach a claimed design, "the mere similarity in appearance" between primary and secondary references "itself provides the suggestion that one should apply certain features to another design" and can demonstrate a motivation to combine. *Sealy Tech., LLC v. SSB Mfg. Co.*, 825 F. App'x 801, 806 (Fed. Cir. 2020) (quoting *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1334 (Fed. Cir. 2014)).[2] Here, LKQ's expert Jason Hill identified primary references and secondary references which he alleges, taken together, would create the same overall visual impressions as the at-issue patents. (*See, e.g.*, ECF No. 220-16 ¶¶ 100, 102, 107, 111, 113–114,

---

[2] While these opinions predate the Federal Circuit's decision in *LKQ Corp.*, the Court can discern no reason why they are not good law given that the decision purported to make the method of establishing obviousness more flexible, and did not purport to make the standard for demonstrating motivation more stringent. 102 F.4th at 1299–1300.

7

116, 118, 156, 161, 163, 188, 195, 219, 221, 225.) GM has provided no argument that the primary and secondary references, all of which are front vehicle fenders, are not so related to themselves establish a motivation to combine. *Sealy*, 825 F. App'x at 807 (holding two mattresses were sufficiently related); *MRC Innovations,* 747 F.3d at 1334 (holding two football jerseys for dogs were sufficiently related). Accordingly, GM's motion for summary judgment is denied.[3]

### III.     Invalidity

LKQ argues that it is entitled to summary judgment on the validity of the at-issue patents under 35 USC § 102(a)(1) because the designs claimed were in public use for over a year before the effective dates of the patents through commercial exploitation at GM's consumer clinics. Public use bars an inventor from obtaining a patent when an invention is in public use more than one year before the effective filing date of the patent and the invention is ready for patenting. *See Minerva Surgical, Inc. v. Hologic, Inc.*, 59 F.4th 1371, 1377 (Fed. Cir. 2023). An invention is in public use when it is either accessible to the public or commercially exploited. *Id.* Ultimately, whether an invention is in public use is a question of law that is "replete with factual considerations." *See Dey, L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351, 1357 (Fed. Cir. 2013).

LKQ premises its invalidity argument on the commercial exploitation prong and concedes that, at this stage, there is a dispute of fact concerning whether the clinics occurred under confidentiality agreements. (ECF No. 224 at 3.) Specifically, LKQ points to three clinics where the '406 Patent was allegedly displayed and one clinic where the '256 Patent was allegedly

---

[3] Given the Court's decision on other grounds, it does not reach whether the extensive prior art cited by LKQ's expert Eric Noble that is not used as a reference could establish a motivation to combine through establishing "demands [for elements] known to the design community." *KSR*, 550 U.S. at 401. However, the Federal Circuit has held that such prior art can be used to demonstrate a motivation to combine even in circumstances where the primary and secondary references do not fully combine to reach the patented object. *Sealy Tech*, 825 F. App'x at 807 (holding that a motivation to combine existed where a feature did not exist in a primary or secondary reference but was "replete" in the prior art).

8

displayed. (ECF No. 224 at 7.) LKQ puts forward evidence that the purpose of these clinics was, at least in part, "to receive consumer feedback about the designs shown to clinic participants, to determine whether the vehicle was sellable, to determine the purchase intent of consumers, to determine whether potential consumers would buy the vehicle and how much they would pay for it, to gauge consumer reaction to GM's vehicle designs in comparison to the vehicle designs of GM's competitors, to gain a competitive advantage for GM's vehicles in the marketplace, and to ultimately help GM sell more vehicles in the future." (ECF No. 224 at 8.) GM, for its part, puts forward evidence that the clinics were not used to sell vehicles, financial terms were not discussed for its vehicles, the vehicles were not for sale, and that the clinics were used to "to measure participants' reactions to design themes in support of its product development efforts, and keeps detailed records that are fed back to the designers." (ECF No. 253 at 2.)

The Court agrees with recent authority from this district in litigation between these parties that there is no binding law indicating that GM's clinics are commercial exploitation as a matter of law and that as such the determination is best left to the finder of fact. *LKQ Corp.*, 2024 WL 4093240, at *16. Indeed, binding law shows that for a use to constitute commercial exploitation the primary or principal purpose of the use must have been commercialization. *See, e.g.*, *Kinzenbaw v. Deere & Co.*, 741 F.2d 383, 390–391 (Fed. Cir. 1984) (affirming a jury verdict because the jury "must have found that the use of the invention . . . was *principally* directed toward commercializing the invention" and considering the totality of the circumstances the court could not say the jury's decision was improper (emphasis added)); *In re Smith*, 714 F.2d 1127, 1134–1135 (Fed. Cir. 1983) (holding, after rejection of claims by the PTO, that a product that was accessible to the public free of confidentiality obligations was not saved by the experimental use exception because the "more dominant purpose" was commercial exploitation, and the "test was

9

an experiment geared toward marketing and only incidentally toward technological improvement."). Here, as discussed above, factual disputes exist as to the primary purpose of GM's clinic. Accordingly, the Court denies LKQ's motion for summary judgment.

## Conclusion

For the reasons stated above, the Court denies LKQ's motion for summary judgment [221], grants GM's motion for summary judgment on the issue of patentability [205], denies GM's motion for summary judgment on the issue of obviousness [214], and grants LKQ's motion for leave to file supplemental authority [342]. In addition, the Court grants the parties' unopposed motions to seal for the reasons stated therein [203] [212] [240] [248] [276] [284] [291] [298]. The Court *sua sponte* stays the pending deadlines in this case [99] pending Magistrate Judge Weisman's ruling on LKQ's motion to disqualify GM's counsel [302]. Within seven days of the entry of such an order, the parties shall submit a joint status report providing proposed next steps in this litigation.

**SO ORDERED.**   ENTERED: June 30, 2025

_____
**HON. JORGE ALONSO**
**United States District Judge**