**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LKQ CORPORATION and<br>KESTONE AUTOMOTIVE<br>INDUSTRIES, INC., | ) <br> ) <br> ) | **Case No. 21 CV 5854** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **Magistrate Judge M. David Weisman** |
| v. | ) | |
| | ) | |
| GENERAL MOTORS COMPANY,<br>GM GLOBAL TECHNOLOGY<br>OPERATIONS, LLC and GENERAL<br>MOTORS LLC, | ) <br> ) <br> ) <br> ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The case is before the Court on plaintiffs' motion to strike defendants' opposition to plaintiffs' motion to disqualify Fish & Richardson ("F&R"), their memorandum of law in opposition to the motion to disqualify, and the declaration of Mary Robinson [ECF 321] and their motion to disqualify F&R from this case [ECF 302]. For the reasons discussed below, the Court grants in part the motion to strike [ECF 321] and denies the motion to disqualify [ECF 302].

**Motion to Strike**

Plaintiffs ask the Court to strike defendants' two-page opposition to plaintiffs' motion to disqualify and their fifteen-page memorandum of law in opposition to the motion to disqualify on the grounds that the combined number of pages exceeds the Court's fifteen-page limit for briefs. There is no basis for filing both an opposition to the motion and a memorandum of law in opposition to the motion. Thus, the Court grants the motion to strike [ECF 321] with respect to the opposition to plaintiffs' motion to disqualify [ECF 314] but denies the motion with respect to the fifteen-page memorandum of law in opposition to the motion [ECF 315]

Plaintiffs also ask the Court to strike the declaration of Mary Robinson from defendants' memorandum in opposition to motion to disqualify "because it contains extensive legal argument, testifies to the ultimate legal opinion regarding LKQ's motion, reiterates the facts already presented, responds to issues and cases raised by LKQ's motion, and opines on LKQ's legal arguments, [and thus] invades the province of this Court." (ECF 322 at 2.) Because the Court did not consider Robinson's declaration in deciding this motion, this portion of the motion to strike is moot.

**Motion to Disqualify**

Irwin argues that Rios's conflict of interest as a paralegal is imputed to F&R as a whole. ABA Model Rule 1.10(a), which controls, states:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless

> (1) the prohibition is based on a personal interest of the disqualified lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm; or

> (2) the prohibition is based upon Rule 1.9(a) or (b) and arises out of the disqualified lawyer's association with a prior firm, and

> (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom;

> (ii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule, which shall include a description of the screening procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures; and

> (iii) certifications of compliance with these Rules and with the screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former client's written request and upon termination of the screening procedures.

ABA Model Rule 1.10, *available at* www.americanbar.org (last visited June 16, 2025). The comment states that "[t]he rule in paragraph (a) . . . does not prohibit representation by others in the law firm where the person prohibited from involvement in a matter is a nonlawyer, such as a paralegal or legal secretary. . . . Such persons, however, ordinarily must be screened from any personal participation in the matter to avoid communication to others in the firm of confidential information that both the nonlawyers and the firm have a legal duty to protect." (*Id.*)

> [T]he Seventh Circuit has adopted a three step analysis for disqualification motions in cases involving the transfer of an attorney from one firm to another:

> "First, we must determine whether a substantial relationship exists between the subject matter of the prior and present representations. If we conclude a substantial relationship does exist, we must next ascertain whether the presumption of shared confidences with respect to the prior representation has been rebutted. If we conclude this presumption has not been rebutted, we must then determine whether the presumption of shared confidences has been rebutted with respect to the present

2

representation. Failure to rebut this presumption would also make disqualification proper."

*Kapco Mfg. Co. v. C & O Enters., Inc.*, 637 F. Supp. 1231, 1236 (N.D. Ill. 1985) (quoting *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983)). Motions to disqualify "should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982).

As to the first question, there is no question that there is a substantial relationship between the prior and present representation because it is the same case. As to the second question, F&R does not dispute Irwin's assertion that Rios had access to LKQ/Keystone's confidential information during her employment with Irwin. The dispute arises as to third question, whether the presumption of shared confidences has been rebutted with respect to the present representation.

Irwin contends that the measures F&R took to keep Rios from revealing LKQ/Keystone's information to F&R and from accessing F&R's information about the lawsuit are insufficient. F&R counters that it has successfully screened Rios from this lawsuit and any other LKQ/Keystone information in F&R's possession now or in the future.

The ABA Model Rules define "screened" as "the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law." ABA Model Rule 1.0(k), *available at*, ABA Model Rules of Professional Conduct, www.americanbar.org (last visited June 16, 2025). A determination of whether screening is effective "can be based on objective and verifiable evidence presented to the trial court and must be made on a case-by-case basis." *Schiessle*, 717 F.2d at 421. Among the factors a court may consider are "the size and structural divisions of the law firm involved, the likelihood of contact between the 'infected' attorney and the specific attorneys responsible for the present representation, the existence of rules which prevent the 'infected' attorney from access to relevant files or other information pertaining to the present litigation or which prevent him from sharing in the fees derived from such litigation." *Id.* "[T]he office under review can rebut the presumption [of shared confidences] by . . . show[ing] that specific institutional mechanisms have sufficiently screened the infected attorney." *United States v. Goot*, 894 F.2d 231, 235 (7th Cir. 1990) (internal quotation omitted).

The evidence here shows that On December 2, 2024, F&R recruiter Dené Maloney created a posting for a litigation paralegal for F&R's Chicago office and posted it on F&R's website, LinkedIn, and Indeed.com. (ECF 317-1, Maloney Aff. ¶¶ 3-4.) On January 6, 2025, when the position was still vacant, Maloney ran a search for intellectual property litigation paralegals in Chicago using the LinkedIn recruiter search tool. (*Id.* ¶¶ 5, 6.) The search results included Rios, whose profile showed she was employed by Irwin. (*Id.* ¶ 7.) Maloney messaged twenty-five candidates to gauge their interest in the position, including Rios, whom Maloney messaged on January 6, 2025. (*Id.* ¶¶ 8, 9.) At the time, Maloney did not know Rios and was unaware of her work on this case or any other case involving LKQ. (*Id.* ¶ 10.) No one at F&R told Maloney to recruit Rios. (*Id.* ¶ 12.)

On January 7, 2025, Rios told Maloney that she was interested in the F&R paralegal position and that she was providing paralegal support at Irwin on cases adverse to F&R. (*Id.* ¶ 13.) On January 9, 2025, after a phone screening, Maloney told Rios to apply for the job, which she did. (*Id.* ¶ 14.) Before her interviews with F&R started on January 10, 2025, Rios was told not to discuss any LKQ/Keystone cases during the interview process. (ECF 317-2, Rios Supp. Aff. ¶ 5.)

On January 16, 2025, Janette Riebe and Jodi Soucek, paralegals with F&R, and F&R attorney Fogel interviewed Rios for thirty minutes via Zoom. (ECF 317-3, Soucek Aff. ¶ 5; ECF 317-4, Riebe Aff. ¶ 5; ECF 317-5, Fogel Aff. ¶ 7.) "At no time during, before or after the interview did [Riebe, Soucek, Rios, or Fogel] discuss any confidential or specific case information, including, but not limited to LKQ or Keystone Automotive." (ECF 317-4, Riebe Aff. ¶¶ 6-7; ECF 317-3, Soucek Aff. ¶¶ 6-7; ECF 317-2, Rios Supp. Aff. ¶¶ 5-7; ECF 317-5, Fogel Aff. ¶¶ 7-11.)

After receiving a preliminary job offer from F&R, Rios completed a conflicts questionnaire on which she listed her entire case list, including this case and numerous others involving LKQ/Keystone, that she worked on at Irwin. (ECF 317-2, Rios Supp. Aff. ¶¶ 8-10.) On January 28, 2025, Rios executed a declaration that set forth her understanding of her ethical obligations. (*Id.* ¶ 11.) On January 29, 2025, Rios told Irwin that she was resigning effective February 12, 2025. (*Id.* ¶ 12; ECF 305, Holubar Decl. ¶ 4.)

During Rios's last two weeks with Irwin, Rios told several Irwin employees that she was going to F&R. (ECF 317-2, Rios Supp. Aff. ¶ 14.) Irwin says Rios refused to schedule an exit interview, but F&R has submitted an email from Irwin to Rios dated the day after Rios's employment with Irwin ended, that says: "I am so sorry to have not scheduled this sooner. We have had influenza in the house for two weeks and it has been a struggle. I would like to give you a call to have a 15 minute or so call for an exit interview. Are you available anytime on Tuesday?" (*Id.*, Ex. 1, 2/13/25 Email from Holubar to Rios.)

F&R implemented an ethical wall on February 21, 2025, sent a firmwide email with a screening memorandum, and notified all personnel about the ethical wall and their obligation not to share with Rios information that was covered by the wall. (ECF 317-3, Soucek Aff. ¶ 9; ECF 317-7, Pannell Aff. ¶¶ 3-10.) F&R sent a second email to the F&R records department telling them to implement the ethical wall with respect to physical files in all F&R offices. (ECF 317-7, Pannell Aff. ¶ 11.) F&R's ethical wall software does not allow anyone to add an employee subject to the wall to the litigation document management system with respect to any matter that is part of the ethical wall. (ECF 317-8, DeMille Aff. ¶¶ 7-8.) There have been no changes to the ethical wall since it was created on February 21, 2025. (*Id.* ¶¶ 9-10.)

Rios started with F&R on February 24, 2025. (ECF 317-10, Rios Aff. ¶ 15.) She has worked remotely at all times since she was hired. (ECF 317-2, Rios Supp. Aff. ¶ 3.)

After Rios's departure from the firm, Irwin discovered that she had permanently deleted more than 17,000 items from her email before she left. (ECF 307, Juarez Decl. ¶¶ 4-8.) Rios says she routinely deleted non-substantive email and whatever she deleted prior to her departure was sent or copied to other Irwin employees, archived in the Irwin system, or both. (ECF 317-2, Rios Supp. Aff. ¶¶ 22-23.)

4

What is clear from this evidence is that F&R did not "target" Ms. Rios for employment. Rather, she was one of twenty-five people Maloney messaged about the paralegal vacancy at F&R. Further, though plaintiffs contend that F&R should have implemented the ethical wall sooner than the Friday before Rios's Monday start date (ECF 303 at 3), they do not explain why doing so was necessary. Moreover, though F&R's Chicago office is small, the fact that Rios works remotely vitiates any concern that she would inadvertently access or reveal information about LKQ/Keystone matters from other staff. Further, the evidence does not support Irwin's claim that Rios hid the fact that she was going to F&R and refused to attend an exit interview. Finally, though Rios's deletion of thousands of emails at the end of her employment with Irwin is troubling, her sworn testimony that everything she deleted was sent or copied to other Irwin employees, archived in the Irwin system, or both vitiates any inference of ill intent. (ECF 317-2, Rios Supp. Aff. ¶¶ 22-23.) In short, F&R has rebutted the presumption that Rios and F&R are sharing confidences with respect to LKQ/Keystone cases. Accordingly, the Court denies plaintiffs' motion to disqualify [ECF 302].

**SO ORDERED**                                    **ENTERED:  July 15, 2025**

M. David Weisman
_____
**M. David Weisman**
**United States Magistrate Judge**

5